The first case is U.S. v. Ernest Translavena. That's submitted. Now we come to United States v. Juvenile Brandon P. Please support, counsel. My name is Tom Hoytel. I represented Brandon P. Court appointed to represent Brandon P in the district court on appeal here. This is an appeal from a juvenile transfer by the district court in Arizona for Brandon P. to be tried as an adult. I'd like to reserve some additional time for rebuttal on this case. We seek reversal of the transfer in this case based upon three issues. One, the failure of the government to file the juvenile records, all the juvenile records that were in existence at the time for Brandon P. prior to the transfer as required by the statute, 18 U.S.C. Section 5032. Two, violation of the speedy trial provisions of the Federal Juvenile Delinquency Act since Brandon P. was not brought to trial within 30 days of when the certification or when the case should have been certified. That issue has been affected by a recent embanked decision of the court in Doe, United States v. Doe, where the court changed. As you can say, a little more than affected. I think it's basically gone, and we probably shouldn't spend any time talking about it. Right. That issue. I would ask on that particular issue that the court in the embanked decision left open the issue of whether if collusion between the Federal authorities and tribal authorities, Doe, of course, involved a transfer of a Native American as well as this case, if there's collusion between the Federal authorities and the tribal authorities, that there may be grounds for starting the detention sooner than when the person goes into Federal custody. I would ask the court to consider remanding or additional briefing on this issue because Doe changed the law on that, and we didn't have an opportunity in the district court to address those particular issues on speedy trial. Doe came down after, in fact, during the briefing process or after the briefing process in this case. What I would like to focus on. Excuse me. Is your only claim as the Speedy Trial Act as to the 30 days, the 30-day rule, nothing that happened after March 10, 2000? Well, there are events after the 30 days and all of that, and Doe took care of that problem. Yes. Would you agree as to the facts afterwards because they're kind of murky as to what happened. Right. Well, what happened before is we took the position in the district court that the certification could have been done as late as February 5th of 2003 and that that would have violated the speedy trial provisions because 30 days, hence, no trial had occurred. Doe changed the law on that and said Federal detention is the key when the person goes into Federal detention. This, Brandon P. went into Federal detention on March 10th, I believe. Well, after that were a number of events, and when did he finally go to trial? He did not go to trial because the day, actually one day before the trial was set on October 30th of 2003, the district judge entered the order transferring him to be tried as an adult. Okay. Between that, the date of March 10th until the day of transfer, are you making any claim of speedy trial violations? No. We're not making a claim on a speedy trial violation for time that was requested by us in preparing for the transfer hearing. We're not making a claim on that. Thank you. Let me just address the, and then the third issue, of course, is the abuse of discretion of the district judge in transferring, in this case, in the light of the psychiatric evidence, which was unrebutted psychiatric evidence, which was presented that there was a realistic chance that Brandon P. could be rehabilitated within the five years available to the district court. Let me just focus briefly on the records issue. The Doe case addressed that particular issue, but, of course, it left the issue open on a violation of Section 5032, 18 U.S.C. Section 5032, and pointed out that that section is mandatory. What it changed was the previous ruling of this Court that the failure to provide the records is a jurisdictional defect. It said it was not, Doe said it was not a jurisdictional defect. The government in this case admits that not all the juvenile records were filed prior to the transfer. They admit that there was no certification of some tribal court, Navajo tribal court records, juvenile court records. They admit there was no certification of records from McKinley County, New Mexico, Gallup, New Mexico. And they admit that there were no records provided for offenses charged against Brandon P. arising out of an arrest by the FBI and tribal authorities on August 22nd of 2002. So it's admitted that there were juvenile records that were not provided prior to the transfer. The government asked the Court to do what every other court that has faced this issue has refused to do, fail to gather all the juvenile records that they know exist or selectively collect the records. The government cites some cases, Parker, Wong, and NJB from other circuits. NJB, in fact, I pointed out, specifically said that the provisions of 5032 are mandatory and that the government is required, has the burden of filing all of those records prior to the transfer. Did you object that all the records had not been transferred? That's an excellent question, Your Honor. The government takes the position that there should have been an objection. In this case, no objection should have been necessary because ---- I know that you haven't answered that excellent question. Well, and I'm explaining. There must be an answer. Either there was an objection or there was an objection. Well, I'm explaining why an objection was not necessary in this case. A specific objection was not necessary because on October 17th ---- Well, necessary or not, you have a question as to whether there was an objection. Is your answer no? The answer is that there was no specific objection to the failure to file records. Why do you want to waste two minutes of your time quibbling about this? Well, because it wasn't necessary in this case because ---- Anyway, you didn't object. I didn't object on October 17th because the district court ordered the government to provide certified copies of all juvenile court records. So between October 17th and 29th, the government had the opportunity to file those records at any time. When was I going to object? This is not like the Doe case where there was an actual disposition hearing at which the defendant's lawyer could have objected to the failure of the government to provide those records. There was no such hearing prior to the ---- no such dispositional or there was no hearing at the time the judge entered the transfer order. The judge simply entered a written order on October 20th. It was filed on October 29th. And the government had been given two weeks to file the records on October 17th. How was I to know ---- How would all of this help you? Pardon me? How would all of this help you? Well, that's the harmless error question, Your Honor. And that question I can't answer because the records were not provided. So I don't know how I can ---- What difference does it make anyway if it's not a jurisdictional defect? Well, it makes a difference to the judge's decision. Does the decision still become interlocutory appealable? Pardon me? If we're not dealing with a jurisdictional defect, do you still have an interlocutory appealable? U.S. v. Gerald N., yes. Collateral order doctrine, yes, it is appealable. Okay. And it did not hinge on the jurisdictional nature of the defect? Well, Gerald N. says we can appeal the transfer decision. The statute requires ---- If you've got a defect that's not jurisdictional, then justification for a collateral, for an interlocutory appeal becomes ---- That would mean there would be no remedy for a violation of 5032. There's lots of things like that, where you have a right, but you can't take an interlocutory appeal. Maybe you could get a reversal after a trial. Well, that would ---- Well, that wouldn't work in this situation. It would make sense to have the matter heard at the time the transfer is appealed, not at a time after a trial and indictment. You've got a minute and nine seconds left. All right. I'll reserve my time for rebuttal. Good morning. Michael Morrissey from the District of Arizona. Thank you for representing the government in this matter. That's quite a windfall, don't you? The government is happy with the intervening law. Yes, that is true. Let me address what ---- Would have made this one more interesting if we didn't have that. That's true, but I'm happy to be here. The government would like to address first what counsel should have done once the certified records were filed. Did he really have an opportunity? And the answer is yes, because after October 17th, the court specifically ordered that the government will file the certified records. This is at page 491 of the SCR. And then they should be viewed by Mr. Hoyle. So if he wants to compare what was previously submitted or if he wants to raise any issues, you can. And after that, there was no further objection by Mr. Hoyle. So just mechanically, the way he would do it is he would file a piece of paper? With the court. Or he would ask for a hearing? What would be the mechanism? I believe it would have been some sort of pleading, a notice to the court and to the government of what he felt was missing, that in particular ---- Would the clerk file something like that? I know in our court, nothing can be filed unless it's an authorized paper, either authorized by rule or authorized by order. I don't know enough about how district courts operate. I believe, Judge, that it would have been filed because, for example, in Arizona, there are local rules requiring notices of confessions and those type of matters. Although, actually, that's outside your hypothetical because that would be arguably required. But our experience in the District of Arizona is, yes, it would have been filed. Well, I guess you'd have to file or you could file a motion for leave to file something that's not ---- But in your experience, based on your experience as a practitioner in the District of Arizona, if you filed a piece of paper saying this is an objection or something, the clerk would take it? I have very little doubt that the clerk would have taken it, yes. The clerk would take it? That's correct. Okay. And I believe the judge had invited Mr. Hoyle to do so if he found some matter that needed to be further raised with the court. And even as we sit here today, there is no suggestion that the records were the, quote, missing records, were inaccurate, went to the reliability of the fact-finding that the court needed to engage in. And, in fact, as the government points out in its brief, the district court did not rely on the missing records as any part of its discretionary decision to transfer. The district court had direct evidence by the FBI agent who was present on August 22, 2003, who testified as to the conduct. But the missing records were not relied on. Furthermore ---- What about the records in New Mexico, in McKinley County, New Mexico? I'm sorry, Judge? What about the ones in McKinley County, New Mexico? The certified copies were not provided. There are, of course, copies that were provided that the government submits were official court records, but they were not certified copies. Okay. Those records from the review of the documents show that they merely went to the dismissal for non-prosecution on a possession of a liquor charge and appear to have played no influence in the court's decision. Didn't some probation officer, Ms. Breed, testify as to what those records were? That's correct, Your Honor, because she had filed a petition to revoke probation, and she listed the tribal charges as one basis for her petition to revoke probation. The Navajo County records, of course, were certified, and those were voluminous. Those were approximately 90 pages of records. Okay. So the government would submit that even if this Court were to find that the omission of a portion of these documents was error, on this record with absolutely no showing of anything that impairs reliability or truth in the fact-finding process, that that small error, if error, was certainly not. What was the excuse for not complying with the court's order? The answer to that is not in the record. Sloppiness? Well, as I said, Judge, I don't want to go outside the record, but there are three categories of records. There's the – Well, if it's sloppiness, we'll excuse you and let you outside. The State – well, it was not done. That is correct. There were three sources of records, State of New Mexico, which ultimately were not certified, Navajo Nation Tribal Court, ultimately not certified, and Navajo County State of Arizona, which were certified. The – I would agree that – Is it your position that the things that were not certified, so long as the court didn't consider them, they couldn't help petitioner any? Well, it's – Is it any position? Okay. It's the government's position, for one thing, that the court is required to receive the official juvenile records, and the court was concerned – I'm sorry. I didn't hear the word is or is not required. Is required to consider the official juvenile court records. The court had a question in its own mind as to whether or not those official juvenile court records must always be certified. This Court has never said that. The certification requirement clearly goes to the nonexistence of records when those cannot be found. But even in the embankment decision at 366 F. 3rd, the court said the district court needs official juvenile records, never has said that those records must be certified. And, again, there is no question as to accuracy. It's an authentication problem. I'm sorry, Judge. It's an authentication problem. If you have a photocopy of a court record, then you have to rely on whoever made the photocopy to have, you know, copied the whole thing. And whereas if you have a certified copy, then the custodian of the records says this is, in fact, what it reports to be and it's complete or whatever. And I can understand the court's reluctance to consider things that are not certified. But on the other hand, there seems to be nothing under the rules that requires it. Exactly, Your Honor. And the language of the statute is in part what the government relies on. But, again, I want to make my argument accurate. The court asked for certified records. The government should have supplied them all. However, the only complaint here certainly does not go to whether or not any of the records not supplied affected the reliability. There's no dispute that these events happened. The court did not rely on the missing records. Rather, the court relied on the conduct. Let me rephrase the question I was asking earlier. Is there any way in which the missing records could have helped the defendant? No. They only could have hurt the defendant, because you're – I'm not trying to make an argument for you, Your Honor. I'm making it. But the way you put it correctly is the remedy for not providing certified records is the government doesn't get to rely on them, and insofar as it can only help the government, they make it less likely that the court will grant it or provide less support for a decision to grant. Exactly. That's the remedy, and Petitioners should be very happy they weren't certified, because the court then doesn't have other bad stuff to consider. Is that your position? That certainly could be a remedy, but I believe that this Court's precedent don't – does not require that, because, again, the statutory language does not require certification in all cases. Assuming the records are not there. Well, now I'm on to a different question. Well, assuming the records are not there in whatever form the court requires them to be there. So essentially not having certified records, given the court has asked for certified records, means they don't exist. And your position is the remedy for they don't exist is that weakens the government's case. Exactly, which it would not have done in this particular instance, because – Well, whatever it did or didn't do, the point is the court didn't rely on it. And the point is – well, that's accurate. And the point is, again – We then look at the remaining things to see whether the district court's decision was supported based on the records it did probably have before it. Whether there was – correct. Whether there was a sufficient basis in this record for the court's discretionary transfer decision. The court's order analyzing the six mandatory factors is very, very well supported in the record. The defense's only objection to that seems to be the defense would like to read in a requirement that a court's finding be only based on expert testimony. But that's not the law. And the court did carefully follow and make findings on each of the six required factors. And the court was entitled to and did rely on some factors more than others. And the single biggest weakness in the defense's argument is that even Dr. Rosenweig's testimony was predicated on self-reporting by the juvenile, which was provably inaccurate based on the record, or at least the court was entitled to give it limited weight. I see that I have one second remaining if there are no further questions. Do you want to yield your remaining time? Yes. Well, that's minus six seconds, so. We'll take it out of defendant's time. The statement that the prosecutor made concerning the inaccuracy of the records is not correct. The – on ER-123, the – Let me ask you. How could they have helped you? Here's how they could have helped. All records of criminal conduct. Here's how they could have helped. They could have had less to look at. Here's how they could have helped, Your Honor, if you'll let me respond. Here's how they could have helped. The records were inaccurate because they did not include the homicide charge. The very same events that are charged in federal court were the basis of a homicide charge in the tribal court. Were there any psychiatric evaluations in the tribal court concerning transfer? Was Brandon P. transferred by the tribal court? What evidence was taken in the tribal court concerning whether he should have been transferred to be tried as an adult in the tribal court? Did the tribal court make that decision? As far as I know, the tribal court can make that decision to try a juvenile as an adult. Oh, I see. And the fact that he may not have been transferred in the tribal court on the homicide charge, the very same charge he was facing in federal court would have been helpful to Brandon P., the juvenile, in the transfer proceeding in federal court. We don't know because we don't have the records. Have you seen those records? Pardon me? Have you seen the records since? Well, I've seen the fact that there's a homicide charge, yes. I've seen that. Where did you see it? The fact that there was a homicide charge in the tribal court from some materials that I obtained from the advocate that he had at the time, that there was a homicide charge there. All right. So how would that help you? Well, it would help because there were proceedings in the tribal court as far as I know. I mean, we don't have the records of them, but apparently there were proceedings in the tribal court. And if he was not transferred in the tri ---- We're having some difficulty treating the proceedings in the same case on a par with his prior record. I thought when we were talking about his record, we were talking about the record of other proceedings. The record in this case automatically becomes, you know, has to be obtained and presented. This case started in tribal court. Well, he was held in tribal court for seven months, in juvenile detention in tribal court for seven months before the government obtained a certification to charge him federally. During that seven-month period of time, he faced charges in the tribal court. It's not the same proceeding as this. No, it is not. It's not the same proceeding. It is not the same proceeding. That's what I asked the court to do. It involves a different crime? It involves some different crimes that were charged at the time of his arrest on August 22, 2002. And it involves a homicide charge, which was the same as the charge in federal court.  So it's a different procedure. There's no double jeopardy implications on that. All right. We got you. Thanks. All right. With respect to the objection based upon the government's thing, but I'll leave it. Thank you. All right. We'll pick up next matter. U.S. versus Rodrigo.
judges: Pregerson, Kozinski, Rhoades